## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MALIBU MEDIA, LLC, | Case No. 1:13-cv-02702 |
| Plaintiff, | Assigned to Hon. Milton F. Shadur |
| v. | |
| JOHN DOE subscriber assigned IP address 67.176.196.59, | |
| Defendant. | |

## JOHN DOE'S RESPONSE TO MALIBU MEDIA'S STATUS REPORT

Pursuant to this Court's order (*see* ECF No. 44), on April 6, 2014, plaintiff Malibu Media, LLC ("**Malibu**") filed a status report summarizing the results of its copyright infringement litigation in this district. *Malibu Media, LLC v. John Doe*, N.D. Ill. No. 1:14-cv-0693, ECF No. 17. By oral motion, the Court also allowed John Doe to file this response to Malibu's status report. *See* ECF No. 51.

One of the issues Malibu was originally asked to address in its report was what differentiates its litigation practices from the practices of Prenda Law, Inc. Prenda, and its various attorneys and affiliated entities, have now been resoundingly sanctioned in several courts across the country, for a variety of different abuses. *See, e.g., Ingenuity 13, LLC v. John Doe*, C.D. Cal. No. 12-cv-8333-ODW, ECF No. 130, 5/6/13 (order awarding sanctions) (9th Cir. Appeal No. 13-55859); *Lightspeed*

*Media Corp. v. Smith*, S.D. Ill. No. 13-cv-0889-DRH, ECF No. 65, 10/30/13 (order awarding sanctions) (7th Cir. Appeal No. 13-3801); *see also Boy Racer, Inc. v. Does 1-22*, N.D. Ill. No. 1:11-cv- 2984, ECF No. 8, 5/9/11 (Shadur, J.) (Court "rejected attorney [John] Steele's effort to shoot first and identify his targets later," and made clear that suits against a "passel of 'Does'" would not succeed).

The report Malibu has submitted to the Court here, predictably, ignores any similarities between Malibu's business model and that of the Prenda group.

The purpose of this response by Doe is to: (a) point out some similarities reminiscent of Prenda's questionable tactics; and (b) reference additional statistics, which put in a broader context the numbers provided by Malibu.

**(a)     Malibu's Notorious Third Party "Settlement Negotiators"**

One point courts have focused on in the past is the use by Malibu and other, similar plaintiffs, of so-called "settlement negotiators" to handle settlement negotiations with John Does.  In particular, in an early case sounding the alarm as to this kind of litigation, Magistrate Judge Gary Brown of the Eastern District of New York had harsh words for "settlement negotiators" who worked for a plaintiff called K-Beech, for their improper, boiler-room-style pressure tactics.  *In re: BitTorrent Adult Film Copyright Infringement Cases,* 2012 U.S. Dist. LEXIS 61447 (E.D.N.Y. May 1, 2012) (No. CV-11-3995).  As it turned out, Malibu, K-Beech, and five other pornographers used the same "settlement negotiators," who were based out of

Miami, where Malibu's lead national plaintiff's counsel is also located.  The facts as to all this are explained in an old declaration undersigned filed in California, which is attached hereto as Exhibit 1.  While most of the issues from that declaration are no longer relevant these days, now that Malibu has switched to filing single-Doe cases, the Court's attention is directed to ¶¶ 7–12 thereto.

While use of telephone debt collectors or designating settlement authority to some independent third party may be less of an issue where Does are represented by counsel, it is notable that Malibu does not mention the whole settlement negotiator issue in its response here.  Prenda, of course, did the same thing with its own phone operatives, even going a bit farther, by making "robo-calls" to Does, which are illegal in many states.  *See* http://dietrolldie.com/2012/06/16/prenda-robo-calls-stupidity-gone-automatic/.  Since Malibu omits it from the report here, one must wonder, is it still using its Miami "settlement negotiator" outfit?

**(b)    The Hidden Hand of Champerty; What Prenda And Malibu Have In Common**

It used to be, under the common law in most jurisdictions, that when non-party intermeddlers stirred up litigation for profit, such conduct was not merely discouraged, it was actually a criminal offense labeled, champerty, maintenance or

barratry.[1]  *See* Paul Bond, "Making Champerty Work: An Invitation To State

Action," 150 U. PA. L. REV. 1297, 1302–1310 (2002) (defining champerty and

related doctrines, discussing its recent treatment by the courts, and concluding that

champerty remains "vital and irreplaceable". In modern times, most jurisdictions

have relaxed the restrictions on champerty to allow contingent fee representation by

lawyers and third-party lawsuit financing.  *Id.* at 1302–1310.

However, in Illinois, as in other jurisdictions,[2] criminal prohibitions against

champerty remain.  *See* 720 Ill. Comp. Stat. 5/32-12 (2008) (forbidding

maintenance, where person un associated with litigation maintains or assists either

party with a view to promoting litigation); 720 Ill. Comp. Stat. 5/32-11 (2008)

(forbidding barratry, where person "wickedly and willfully excites and stirs up

actions. . .with a view to promote strife and contention").

In the Prenda cases, it was the plaintiffs' lawyers themselves who stirred up

the litigation by approaching pornography producers and pitching them on the

profitability of industrial-scale BitTorrent litigation.  In view of continuing

prohibitions on champerty, that, in and of itself, was questionable.  However, what

really got the Prenda group in trouble was that they attempted to *hide* the fact that

---

[1] The three terms, champerty, maintenance, and barratry are sometimes defined differently, and sometimes used interchangeably.  For the remainder of this response, Doe is going to use the term "champerty" as a shorthand for all three doctrines.

[2] *See, e.g.*, Cal. Pen. Code §§ 158–159 (making barratry a criminal offense in California); MD Code Ann., Bus. Occ. & Prof. § 10-604 (prohibiting, *inter alia*, "solicit[ing] another person to sue" in Maryland).

the lawyers essentially became the actual real parties in interest by taking assignment to the copyrights in suit. The Prenda lawyers attempted, unsuccessfully, to hide their ultimate financial interest in the outcome of the cases behind a web of offshore shell companies, straw men, and even identity theft. *Ingenuity 13*, *supra*.

Similarly, it has recently come to light that Malibu's key witness, the mysterious German IT firm that does the BitTorrent "monitoring" on which these lawsuits are all based is in fact being compensated by Malibu and/or its lawyers on a contingent fee basis. Malibu admitted in verified discovery responses that its key witness, IPP, is being paid pursuant to an "oral contingency agreement." *Malibu Media, LLC v. John Doe*, N.D. Ill. No. 1:13-cv-6312, ECF No. 24-5, 1/7/14 (Response No. 1). Further, contrary to Malibu's statements made to various courts, it seems clear that IPP is merely a front for a discredited German company called Guardaley, and that Guardaley has attempted to mask its key role in this litigation by using IPP as a shell company. All of this is explained in much greater detail in motions currently pending in the District of Maryland, where, under Fourth Circuit precedent, contingent fee witnesses are typically excluded *per se*. *Malibu Media, LLC v. John Doe*, D. Md. No. 1:14-cv-0223-MJG, ECF Nos. 7–9, 3/28/14.

Despite the call of the question by this Court, Malibu, in its report, fails to acknowledge this similarity with Prenda.

- 5 -

**(c)      Recent Analysis Of "Systematically Opportunistic" Copyright Litigation**

As noted at the hearing in this matter, a recent law review article by a professor at Loyola Law School may provide instructive, nationwide context for Malibu's numbers, which focus on its activities in this district only.  Matthew Sag, "Copyright Trolling, An Empirical Study," (May 14, 2014), Iowa Law Review, Forthcoming (available: http://ssrn.com/abstract=2404950) (attached as Exhibit 2).

Professor Sag's analysis reveals that the Northern District of Illinois is now the number one venue in the country for multi-Doe pornographic infringement litigation.  A recent PACER search suggests that this district is also in the lead for Malibu's single defendant lawsuits.  Finally, it should also be noted that Professor Sag proposes the first workable definition of so-called "copyright trolling," which focuses on systematically opportunistic conduct by litigants like Malibu.

Respectfully submitted,

DATED:   May 21, 2014

**THE PIETZ LAW FIRM**

*/s/ Morgan E. Pietz*

Morgan E. Pietz (Cal. Bar No. 260629)
3770 Highland Avenue, Suite 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone: (310) 424-5557
Facsimile:  (310) 546-5301

*Attorneys for Defendant John Doe ISP Subscriber*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing paper with the Clerk of the Court using ECF, which will send notification of such filing to all attorneys of record.

/s/ Morgan E. Pietz
Morgan E. Pietz

Respectfully submitted,

DATED:   May 21, 2014