# EXHIBIT 1

Morgan E. Pietz (SBN 260629)
THE PIETZ LAW FIRM
3770 Highland Avenue, Suite 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone: (310) 424-5557
Facsimile : (310) 546-5301

Attorney for Putative John Doe

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MALIBU MEDIA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>JOHN DOE,<br><br>Defendant. | Case Number: 3:13-cv-0437-LAB-DHB<br><br>Case Assigned to:<br>District Judge Larry Alan Burns<br><br>Discovery Referred to:<br>Magistrate Judge David H. Bartick<br><br>**DECLARATION OF MORGAN E. PIETZ**<br><br>Hearing Date:    September 3, 2013<br>Hearing Time:    3:30 P.M.<br>Before Magistrate Judge Bartick |

-1-
**DECLARATION OF MORGAN E. PIETZ**

# INDEX OF EXHIBITS
# TO DECLARATION OF MORGAN E. PIETZ

| | |
|---|---|
| Exhibit A | Complete national case list from PACER for the Plaintiff, current as of June 6, 2013 |
| Exhibit B | Declaration showing how Malibu Media routinely tries to take early discovery beyond the scope of what is alleged in its complaints |
| Exhibit C | Copies of four sworn declarations that speak to Malibu Media's prior history of bad faith litigation tactics |

## DECLARATION OF MORGAN E. PIETZ

I, Morgan E. Pietz, am over the age of 18 years old, have personal knowledge of the facts alleged herein, and hereby declare as follows:

1. I am an attorney in good standing, duly admitted to the practice of law in the state and federal courts of the State of California. I am also admitted to the bar of the United States District Court of the Northern District of Illinois, although I am not licensed in Illinois.

2. I am the attorney principally responsible for the representation of multiple different individuals who received letters from their ISPs regarding subpoenas issued by plaintiffs Malibu Media, LLC and Patrick Collins, Inc. I represent a putative John Doe in this case.

3. My clients, including my client here, wishes to proceed anonymously, at least with respect to challenging the propriety of the subpoena and of joinder, given the potentially embarrassing, pornographic nature of the content Plaintiff is claiming my clients downloaded.

4. The identities of each of my clients, including the putative John Doe I represent here, are known to me, and. if the Court requests it, I would be happy to lodge with the Court an exhibit identifying, *for the Court only,* each Doe who is a moving party by name, contact information, I.P. address and/or Doe number and/or a redacted copy of the letter the client received from his or her ISP.

**(a)** **Malibu Media and Patrick Collins: Serial Copyright Infringement Plaintiffs**

5. I am very familiar with the plaintiff in this action. I represent various people around the country who have been threatened with suit by Malibu Media and Patrick Collins. As of the end of 2012, between them, Malibu Media and Patrick Collins (which are represented by the same lawyers, who use the same cookie-cutter pleadings and expert declarations, etc.) have filed 653 total copyright infringement

actions, against approximately 10,578 John Doe defendants, all since 2011. I calculated these figures by running a national PACER search for both of those parties. In August of 2012, I had my office staff tally up all of the Malibu Media cases then pending nationally, and calculate the average number of John Does in each of Malibu Media's cases then pending. The result came out to an average of 16.2 John Does per Malibu Media action. In 2011, Patrick Collins had some cases where it sued as many as several thousand John Does at a time. In any event, assuming the more conservative national average of 16.2 Does per case for Patrick Collins as well, and adding only the Malibu Media and Patrick Collins cases together, results in the following figures: 653 total copyright infringement actions, against approximately 10,578 John Doe defendants, from 2011 until the end of 2012. A true and correct copy of the complete case list from PACER for the Plaintiff, current as of June 6, 2013, is attached hereto as <u>Exhibit A</u>.

**(b)      Abusive Litigation Tactic Number One: Failure to File Notices of Related Cases**

6.      Notwithstanding the many similarities[1] between the cases filed by Malibu Media, as well as the cases filed by plaintiff's counsel on behalf of Patrick Collins, Inc., the plaintiff's lawyers in these cases routinely and willfully ignore various Courts' related case rules. Undersigned counsel has personally observed this phenomenon repeated by various Malibu Media local counsel in at least six different judicial districts across the country, including: Central District of California (Malibu Media never filed notice of related cases; cases ultimately assigned to Judge Klausner); Southern District of California (Malibu Media never filed notice of related cases; all Malibu Media cases ultimately assigned to Judge Burns); Eastern

---

[1] Typically, the complaints are identical, tracking word for word, line by line; they rely upon the same purported technical expert Tobias Fieser for a declaration supporting the early discovery request; the various cases often involve the very same copyrighted movies; and, of course, it is the same plaintiffs counsel behind the whole operation, whether Malibu Media or Patrick Collins is the client.

-4-
**DECLARATION OF MORGAN E. PIETZ**

District of California (Malibu Media only filed notice of related cases after being pressured to dos; all Malibu Media cases ultimately referred to Magistrate Judge Drozd); the Central District of Illinois (Malibu Media never filed notice of related cases; all Malibu Media cases ultimately assigned to Chief Judge Shadid); the Northern District of Illinois (cases still spread out to different Judges; coordinated action likely pending); the D.C. District (cases spread to different Judges); and the Eastern District of Michigan (cases spread to different Judges).[2] The foregoing list is not meant to be comprehensive; rather, it is simply a list of districts that undersigned counsel is familiar with, where Malibu Media has been content to waste judicial resources in this fashion. In short, non-compliance with the related case rules is no accident; rather it appears to be part of Malibu Media's national litigation strategy.

**(c)     Abusive Litigation Tactic Number Two: Use of Same Group of Notorious Professional "Negotiators" to Extract Settlements for Alleged Infringement**

7.   On June 13, 2012, I attempted to contact counsel for Malibu Media in California, Ms. Leemore Kushner, via email to ask what its settlement demand for a client Malibu Media was threatening with suit in the Central District of California.

8.   On June 14, 2012, Ms. Kushner told me via email that the next day, either she or her client, with whom she authorized me to speak, would be getting back to me with a settlement demand. When nobody called on Friday, I followed up with Ms. Kushner first thing Monday morning June 18, 2012.

9.   Later on June 18, 2012, I received a voice message from a woman named Elizabeth Jones, who called me from a 786 (Miami) area code. In her voice message, Ms. Jones identified my client's case number and Doe number, and

---

[2] Here, Malibu Media has ignored this district's companion case rule for months (L.R. 83.11(b)(7)). To date, as far as undersigned counsel is aware, none of Malibu Media's cases in this district have ever been identified as companion cases.

explained that she was given my information by Ms. Kushner who authorized me to speak with her and that "we handle the settlement communications."

10. I called Elizabeth Jones back later that day, June 18, 2012, and she answered. I asked her what company she was with and she said "we work with Malibu Media." I asked her if she was an employee of Malibu Media, and she responded that "we work in relation with them." I asked her if she worked for an independent company that handled Malibu Media's settlement communications, and if so, what was the name of her company. She repeated that "we work with Malibu Media." I asked her to please explain what she meant by "we" when she said "we work with Malibu Media" because this sentence seemed to imply that she did not actually work for Malibu Media and was therefore not the "client" with whom I had been authorized to speak. She responded that it seemed like I was not really calling because I was serious about a settlement, but that she "handled" Malibu Media's settlement communications. Later in this conversation, Ms. Jones admitted to me that she fielded settlement calls from "20 to 30 counsel per day," and when I asked how long she had been doing this line of work she answered for "a couple years." Based on her answers during our phone call, as well as my experience in similar copyright infringement cases, I concluded that Ms. Jones is likely a third party "negotiator" to whom Malibu Media outsources is collection efforts.

11. On Monday June 25, 2012, at 12:05 p.m., Elizabeth Jones called me again to follow up on our prior discussion. She explained that she understood I had more than one case pending with Malibu Media and asked me to identify what John Does I was representing. Before answering, I pressed her again to please clarify what her exact capacity was in connection with this case. I asked her if she was an attorney, and she said no. After explaining that I did have more than one of these cases, I asked her if I could contact her about all of them, and did she work for a third party company that handled negotiations for Malibu Media. This time, she explained that yes she did work for such a company, and that "we" have a "Joint

**DECLARATION OF MORGAN E. PIETZ**

Sharing Agreement" with "Zero Tolerance, Third Degree, Patrick Collins, K-Beech, Malibu Media, Raw Films, and Nu-Corp." I asked her to repeat that so I could write it down, and she did. She also offered that I could contact her directly to negotiate for any of those plaintiffs.

12. At no time during either of my conversations with Elizabeth Jones, the non-attorney, third party "negotiator," did she ever indicate that she considered our conversation to be confidential or that I should treat it as such. Similarly, I also did not invoke confidentiality. Neither Ms. Jones nor I ever used the word confidential, or any word like it, at any point in our two conversations.

**(d)      Abusive Litigation Tactic Number Three: Material Misrepresentation by the Settlement Negotiator as to the Range of Statutory Damages**

13. During my conversation with Elizabeth Jones, Malibu Media's settlement negotiator, on June 18, 2012, she told me that Malibu Media's settlement demand for my client was $19,500. She explained that Malibu Media sought "the minimum statutory damages for each work of $750 per work," and that in the case of my client, John Doe No. 5, there were "a total of 26 registered hits." At first, I did not realize that what Malibu Media's settlement "negotiator" told me is actually incorrect. The actual statutory damage *minimum*, for innocent infringement, is $200 per work. 17 U.S.C. § 504(c)(2). Eventually, it dawned on me that this statement was incorrect; however, I doubt that a non-lawyer speaking to "Elizabeth Jones," or even a lawyer unfamiliar with copyright law, would catch this small but important misrepresentation.

**(e)      Abusive Litigation Tactic Number Four: Use of the Court's Subpoena Power to Try and Collect on Claims That Are Not Alleged in the Complaint and Go Beyond the Scope of this Litigation**

14. After Ms. Jones explained Malibu Media's settlement demand to me

during our phone conversation on June 18, 2012, wherein she said my client was liable for "a total of 26 registered hits," I told her that this did not sound right to me. I explained that I thought my client was alleged to have infringed less than 26 works of authorship. So I pulled the complaint while we were on the phone together, confirmed, and then explained to Ms. Jones that, per Exhibit C of the complaint, my client was alleged to have infringed on only 15 copyrighted works. I further explained that by my math, applying the $750 "minimum" figure, worked out to $11,250, not $19,500. At this point, I asked Ms. Jones to please double check that to make sure that she had the right case and Doe number, because I could not understand why the demand was $19,500, and I thought perhaps she had my client mistaken with someone else.

15. Ms. Jones confirmed that she was sure we were talking about the correct case and Doe, and confirmed the $19,500 figure was not a mistake. She explained to me that although the complaint alleged a siterip for 15 registered works, on April 1, 2012, *according to her records*, there had been "a second siterip, 2 days later" for 11 more works. **I explained that I was trying to settle the claims that were actually alleged in the Complaint**, and that according to Exhibit C of the Complaint, my client had allegedly infringed 15 works of authorship, not 26. She again reiterated that according to her records, there was a "second siterip" on April 3, 2012, and that because of this, the settlement demand was going to be $19,500 to settle Malibu Media's claims, and that she "could send me a declaration" about the second siterip. I then asked her if any settlement had to be all-or-nothing, meaning was it possible for my client to pay $11,250 to settle only those claims actually alleged in the complaint? She responded that "it is all or nothing" and that if my client wanted to settle he/she would have to pay the full $19,500. At this point, I said that since I didn't know anything about the "second siterip" not alleged in the complaint, it was hard for me to know what to make of this demand, and I asked her to please send me the declaration she had mentioned. She said she would do so.

-8-
**DECLARATION OF MORGAN E. PIETZ**

16. During my conversation with Elizabeth Jones, Malibu Media's negotiator, on June 18, 2012, I also asked her what the next steps would be if my client did not pay the $19,500 demanded for settlement. She said that the next step would be "service," and that "as the case goes on, the settlement number will go up." She further explained that if "our side has to do more work on the case," the value will go up. I asked her to explain what she meant by the next step being service, and she explained that after information is disclosed they would be sending letters asking whether we would accept service. I replied that it was my understanding that Malibu Media had filed over 200 lawsuits, against thousands of John Doe defendants, and that it had served essentially none of them, so I asked her if she had any experience settling claims with defendants who had actually been served. She responded that she *had* accepted settlement for defendants who had been served. I asked her how many, to which she responded "I am not the one on trial here." Then I asked her whether she was new to the company and if she really knew what she was doing, which is when she explained to me that she fields calls from "20 to 30 counsel per day" and, when prompted, explained that she had been doing this for "a couple years." I asked her if she could tell me, based on her extensive experience, out of how many cases she had handled, had she accepted a settlement from someone who had already been served with a complaint. She responded "every case is different."

17. Before hanging up with Elizabeth Jones, I reiterated that I would like her to send me the declaration she had mentioned about the "second siterip." I asked her how long it would take her to send me this declaration, and she said that it would be sent to me, by Ms. Kushner, within 24-48 hours. I asked her for her email address so I could follow up, and she insisted that any email contact should go through Leemore Kushner. Then I thanked her for her time and hung up.

18. After waiting the requisite 24-48 hours and not receiving the Declaration Elizabeth Jones had promised me, I emailed Plaintiff's counsel Leemore

-9-
**DECLARATION OF MORGAN E. PIETZ**

Kushner to follow up. Attached hereto as <u>Exhibit B</u> is a true and correct copy of the "Declaration" that was sent to me by Ms. Kushner. This Declaration, which was executed by Malibu Media's technical expert, purports to provide details about the "second siterip," which is not alleged in the complaint but which supposedly occurred on April 3, 2012. For reference, the complaint in this case, C.D. Cal. Case No. 12-cv-3614, was filed on April 26, 2012.

19. Ms. Kushner has repeated this tactic with respect to other Does sued by Malibu Media, and with respect to other Does sued by Patrick Collins. On August 10, 2012, I contacted Ms. Kushner regarding my client, putative John Doe No. 7 in C.D. Cal. Case No. 12-cv-5268, who, according to the complaint, downloaded a single copyrighted work owned by Patrick Collins, called *Anal Students*, on 4/11/12. When we discussed settlement, Ms. Kushner insisted that any settlement would have to also compensate Patrick Collins for the additional infringements, of additional works, which were "logged" on subsequent dates. In that case, C.D. Cal. Case No. 12-cv-5268, the *complaint* alleges that my client, putative Doe No. 7, downloaded a single work—*Anal Students*—on 4/11/12. However, in order to settle the case, Ms. Kushner insisted that "The settlement demand for this Doe is [REDACTED] for his/her infringement of three of Patrick Collins' works:

    04/11/2012 10:00:09 | Anal Students
    06/18/2012 07:56:29 | Performers of the Year 2012
    04/30/2012 06:28:30 | Asa Akira Is Insatiable #2."

It is significant that the infringement of the second two titles, which are the subject of other lawsuits filed by Ms. Kushner, is **not alleged in the complaint** in 12-5268. Notably, when the Court granted early discovery in that action, as many other Courts have done, it ordered that "Patrick Collins, Inc. may only use the information disclosed for the sole purpose of protecting its rights in pursuing this litigation." 12-5268, Dkt. No. 7, p. 5. Taking settlement demands beyond the scope of what is actually alleged in the complaint—which appears to be a routine practice for

Plaintiff—would appear to, at the very least, come perilously close to violating this condition of the Court's order.[3] My understanding is that other "local counsel" for Malibu Media in other districts, generally conform with this same practice; I know for a fact that Malibu Media's lawyer in the Eastern District of Pennsylvania, Jason Kotzker, does this same thing, and have heard that other "local counsel" for plaintiff does so too. None of this is surprising given that, on information and belief, all the Malibu Media, Patrick Collins, Third Degree Films, NuCorp, K-Beech, Zero Tolerance, and Raw Films litigation is steered nationally by the Miami law firm of Lipscomb Eisenberg & Baker, PLLC; the "local counsel" are presumably just following orders.

**(f)      Abusive Litigation Tactic Number Five: Overbroad Subpoena Seeking Phone Numbers and Emails**

20.    On May 1, 2012, Magistrate Brown, of the Eastern District of New York, issued a report and recommendation that was specifically addressed to Malibu Media. In the discovery order part of the report, Judge Brown directed that "Under no circumstances are plaintiffs permitted to seek or obtain the telephone numbers or email addresses of these individuals." The plaintiffs to whom Judge Brown was referring specifically include Malibu Media.

21.    Three days later, on May 4, 2012, Malibu Media filed its request for early discovery in C.D. Cal. Case NO. 12-cv-3614, seeking to obtain by subpoena the telephone numbers and email addresses of John Does who allegedly reside in the Central District of California. Similarly, in the Southern District, Ms. Kushner also

---

[3] Another example of this same pattern occurred on July 18, 2012. I emailed Ms. Kushner regarding a settlement for a client sued by Malibu Media in C.D. Cal. Case No. 12-650. The complaint alleged a person using my client's I.P. address downloaded one movie. However, Ms. Kushner insisted that any settlement would have to be for seven movies. As in other cases, the order authorizing early discovery in that case—which was subsequently vacated—required that "Plaintiff, Malibu Media, LLC, may only use the information disclosed for the sole purpose of protecting its rights in pursuing this litigation;". C.D. Cal. Case No. 8:12-cv-650, Dkt. No. 7, p. 6:26-27. It seems clear that Ms. Kushner is using the subpoenas to try and collect on claims that go well beyond the four corners of the complaints.

-11-
**DECLARATION OF MORGAN E. PIETZ**

spent much of mid-May filing requests for early discovery which sought information Malibu Media had been specifically ordered not to request anymore. *E.g.*, S.D. Cal. Case No. 12-cv-1135, Dkt. No. 4, Motion for Discovery for Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference, filed May 15, 2012. Similarly, Ms. Kushner has sought the same information from the Courts of this District, subsequent to Judge Brown's order. Although many Judges since Judge Brown have imposed the same restriction, and a conservative litigant acting in good faith would just stop asking for this information altogether, in each new District plaintiff generally tries again to obtain phone numbers for the Does, so it can leave less of a paper trail in its efforts to pressure the ISP subscribers into "settling."

**(g)    Abusive Litigation Tactic Number Six: Malibu Media and Patrick Collins' History of Seldom Serving Any John Does**

22.    As of mid-July, 2012, I had filed at least four motions challenging Malibu Media to disclose, under penalty of perjury, how many John Does it has served nationwide. However, until early September, 2012, Malibu Media refused to answer this question, in any forum.

23.    Accordingly, on July 17, 2012, I endeavored to try and answer this question on my own. To begin this process, I ran an updated search of all cases Malibu Media has filed nationwide on PACER and exported the results as a spreadsheet. As of July 17, 2012, this number had risen to 237 cases. After sorting the data by date filed, I highlighted on the spreadsheet the 35 cases that were over 120-days old as of July 17, 2012. I then directed my staff to pull the docket reports for each of these 35 cases, and I reviewed each one of dockets myself, filling in the final two columns on the spreadsheet with my results.

24.    As of July, 16, 2012, Malibu Media had not formally served a single John Doe defendant in any of the 35 cases it has filed that were at least 120 days old on that date. In most cases, Malibu Media: (i) voluntarily dismissed remaining John Does (meaning those who had not already settled) *without* prejudice at or near the

service deadline; (ii) sought leave of Court for an extension of time for service, or simply ignored the service deadline altogether; or (iii) in two cases, Malibu Media simply dismissed the case without prejudice prior to even requesting early discovery.

25. In a reply brief Ms. Kushner filed in the Central District of California on September 10, 2012, for the first time that I am aware of, Malibu Media addressed, albeit in misleading fashion and not under penalty of perjury, the question of how many people has it actually served nationwide. C.D. Cal. Case No. 2:12-cv-03614-RGK-SS, Dkt. No. 33, Filed 09/10/12. In my opposition to Malibu Media's Renewed Motion for Leave to Issue Third Party Subpoenas to ISPs Prior to a Rule 26(f) conference, I had argued that Malibu Media's subpoenas are not "very likely" or even "reasonably likely" to lead to identification and service of a complaint on a proper defendant, given that Malibu Media basically never serves anyone. Malibu Media responded that it "has sued numerous individual defendants for copyright infringement in courts throughout the country, and has every intention of ***litigating*** these cases as well." *Id.* (emphasis added). Notably, Ms. Kushner does not say that Malibu Media has every intention of actually "serving" anybody. In support of this statement, Ms. Kushner dropped a footnote, "*e.g.*" citing to 18 cases from across the country. The cases Ms. Kushner cited are:

    a. Malibu Media LLC v. Southgate, 3:12-cv-00369-DMS-WMC (S.D.Cal.);

    b. Malibu Media, LLC v. Abrahimzadez, 1:12-cv-01200-ESH (D.D.C.);

    c. Malibu Media LLC v. Bochnak, 1:12-cv-07030 (N.D.Ill.);

    d. Malibu Media LLC v. Siembida, 1:12-cv-07031 (N.D.Ill.);

    e. Malibu Media LLC v. Vancamp, 2:12-cv-13887-PDB-DRG (E.D.Mich.);

    f. Malibu Media LLC v. Fantalis, 1:12-cv-00886-MEH (D.Colo.);

    g. Malibu Media LLC v. Xu, 1:12-cv-1866-MSK-MEH (D.Colo.);

  h. Malibu Media LLC v. Allison, 1:12-cv-1867-MSK-MEH (D.Colo.);

  i. Malibu Media LLC v. Ramsey, 1:12-cv-1868-MSK-MEH (D.Colo.);

  j. Malibu Media LLC v. Tipton, 1:12-cv-1869-MSK-MEH (D.Colo.);

  k. Malibu Media LLC v. Kahrs, 1:12-cv-1870-MSK-MEH (D.Colo.);

  l. Malibu Media LLC v. Domindo, 1:12-cv-1871-MSK-MEH (D.Colo.);

  m. Malibu Media LLC v. Peng, 1:12-cv-1872-MSK-MEH (D.Colo.);

  n. Malibu Media LLC v. Maness, 1:12-cv-1873-MSK-MEH (D.Colo.);

  o. Malibu Media LLC v. Nelson, 1:12-cv-1875-MSK-MEH (D.Colo.);

  p. Malibu Media LLC v. Geary, 1:12-cv-1876 MSK-MEH (D.Colo.);

  q. Malibu Media LLC v. Detweiler, 2:12-cv-4253-ER (E.D.Pa.);

  r. Malibu Media LLC v. Johnston, 2:12-cv-4200-JHS (E.D.Pa.).

  26. Curious, I had my office staff pull the docket for all 18 of these cases from PACER, and we compiled them. I then reviewed each docket. Based on my review of these dockets, and assuming these are the only cases where Malibu Media has served anyone, it appears that, ***as of September 2012, nationwide, out of the nearly 300 cases it has filed against nearly 5,000 John Does, Malibu Media can point to having served a grand total four people, in two cases***. Specifically, out of the 18 cases Malibu Media cites as evidence that it is serious about "litigating," and as shown in Appendix 2, it appears Malibu Media served three people (Jeff Fantails, Bruce Dunn, and Stephen Deus) in Case No. 12-cv-0886 currently pending in the District of Colorado, and one person (Gan Southgate) in Case No. 12-cv-369 currently pending in the Southern District of California. All the rest of the cases are instances where "Malibu Media" has followed through on its threat to "name" someone and trash their reputation, but has not yet actually served anyone and subjected themselves to a counter-claim for abuse of process. Based on these numbers, it would appear that Malibu Media's nationwide service of process average is an infinitesimal 0.04%. When I looked at the spreadsheet another way, it showed that of those 287+ cases nationwide, 139 cases, or not quite half, were already over

**DECLARATION OF MORGAN E. PIETZ**

120 days old as of September 13, 2012. And as of that date, Malibu Media appears to have served 4 people.

27. My office has yet to calculate similar national numbers for Patrick Collins. However, I have performed a cursory review the dockets in each of the terminated cases filed by Patrick Collins in both the Southern District of California and the Central District of California. It appears the same pattern holds. Generally, after seeking early discovery, and sometimes after requesting extensions of the service deadline, at or near the service deadline, the plaintiff simply dismisses most, and eventually all Does (other than those who have already "settled") without prejudice. There are a total of 11 prior cases filed by Patrick Collins in the Southern and Central Districts of California, terminated as of September 21, 2012, and it appears that in no case have they served anybody.

28. Attached hereto as Exhibit C are true and correct copies of four sworn declarations filed by the defendant in one of the few Malibu Media cases nationwide where Malibu Media has actually served someone. Three of the declarations are from subpoena defense attorneys like me detailing how Malibu Media routinely ignores attempts to meet and confer to try and resolve these lawsuits in good faith. And the final declaration is from a 66 year old *pro se* defendant who has had the same troubling experience. The attorney being referred to in these declarations, Jason Kotzker, represents both Malibu Media and Patrick Collins. These declarations were originally filed in *Malibu Media v. Fantails,* D. Colo. Case No. 1:12-cv-00886-MEH, ECF No. 80, pp. 37-41.

**(h)      Recent Developments: Single Doe Suits, "Expanded Surveillance Reports," and "Exculpatory Evidence Requests"**

29. Starting in 2013, Malibu Media essentially gave up the ghost on "swarm joinder" and switched to mainly filing single-Doe lawsuits. I have observed this in multiple districts, and it is reflected in Exhibit A.

-15-
**DECLARATION OF MORGAN E. PIETZ**

30. Along with the switch to single-Doe cases, Malibu Media has also begun including as exhibits to its complaints two somewhat unusual documents. The first document is something Malibu Media usually styles an "expanded surveillance report." This essentially consist of a record of various video titles that Malibu Media's purported technical expert alleges was downloaded by the same IP address observed downloading Malibu Media content. Generally, the content Malibu Media lists in the "expanded surveillance report" is considerably more graphic and embarrassing than the titles of Malibu Media movies. *See Malibu Media, LLC v. John Doe*, E.D. Wi. No. 3:13-cv-0205-slc, ECF No. 7 (order to show cause why Malibu Media should not be sanctioned for including embarrassing, non-evidentiary material as attachment to complaint). Malibu Media also includes as an attachment to its complaints, an so-called "exculpatory evidence request." Presumably, Malibu Media hopes that pro se defendants will complete this form when they prepare an answer, and thus provide Malibu Media with incriminating information outside the confines of the Rules of Civil Procedure.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 1, 2013, at Manhattan Beach, California.

*/s/ Morgan E. Pietz*
Morgan E. Pietz, Declarant

-16-
**DECLARATION OF MORGAN E. PIETZ**